54 F.3d 785
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 In re Exeter C. CASTLE; Gustine C. Castle; Donal M. Detmers,
dba Canaloupe Enterprises; Linda C. Dirksen, Debtors.
Exeter C. CASTLE; Gustine C. Castle; Donal M. Detmers, dba
Canaloupe Enterprises; Linda C. Dirksen, Appellants,
v.
PACIFIC TRUST COMPANY, Trustee for the Paul Paulson Keogh
Plan, Appellee.
 Nos. 93-17325, NC 92-02139-OJAS.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 11, 1995.
Decided May 17, 1995.
 
 Before: GIBSON,* HUG, and FERGUSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 This case involves the issue of whether the bankruptcy court erred in defining and applying the phrases "materially false" and "reasonably relied" as set forth in 11 U.S.C. Sec. 523(a)(2)(B) (1988). Exeter and Gustine Castle, Donal Detmers, dba Canaloupe Enterprises, and Linda Dirksen (collectively "the Debtors") appeal from the Bankruptcy Appellate Panel's decision affirming the bankruptcy court's order that their debt to Pacific Trust Company, Trustee for the Paul Paulson Keogh Plan, was nondischargeable. We have jurisdiction over this appeal pursuant to 28 U.S.C. Sec. 158(d) (1988), and we affirm.
 
 I. BACKGROUND
 
 3
 One of Paul Paulson's investments in his Keogh Plan was a $30,000 loan to the Debtors, which was secured by a third deed of trust on their real estate. In the financial statement of their loan application, the Debtors listed an automobile collection valued at $168,000, pianos valued at $30,000, and other personal property valued at $50,000. However, when the Debtors later filed for bankruptcy, they valued the automobiles at $21,550 and their other personal property, including the pianos, at no more than $5800.[1] Pacific Trust Company brought this adversary action and requested that the $30,000 debt be nondischargeable.
 
 
 4
 After a bench trial, the bankruptcy court made the following findings: (1) Paulson provided credible testimony that the information in the Debtors' financial statement affected his decision to approve the loan;[2] (2) Paulson had no reason to know that this information was false; (3) Paulson reasonably relied on the Debtors' financial statement; (4) the misrepresentations were material; (5) the Debtors intended to deceive Paulson; and (6) the loan. Debtors gave no significant explanation for the discrepancy between the values listed in their financial statement and those listed in their bankruptcy schedules. The bankruptcy court concluded that the Debtors' obligation to Pacific Trust was nondischargeable because Paulson had reasonably relied on the Debtors' materially false financial statement. See 11 U.S.C. Sec. 523(a)(2)(B). The Bankruptcy Appellate Panel ("BAP") affirmed the bankruptcy court's decision, and the Debtors appeal.
 
 II. DISCUSSION
 A. Dischargeability of Debts
 
 5
 The Supreme Court has acknowledged that "a central purpose of the [Bankruptcy] Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." Grogan v. Garner, 498 U.S. 279, 286 (1991) (quotation omitted). On the other hand, the Supreme Court has recognized that the opportunity for an unencumbered new beginning is limited to the "honest but unfortunate debtor," not the defrauder. Id. at 287 (quotation omitted). 11 U.S.C. Sec. 523(a) sets forth the exceptions to the general "fresh start" rule.
 
 
 6
 In order for a court to find that a debt is nondischargeable pursuant to Sec. 523(a)(2)(B),[3] the creditor has the burden of establishing: (1) a representation of fact by the debtor; (2) that was material; (3) that the debtor knew at the time to be false; (4) that the debtor made with the intention of deceiving the creditor; (5) upon which the creditor relied; (6) that the creditor's reliance was reasonable; and (7) that damage proximately resulted from the misrepresentation. See In re Siriani, 967 F.2d 302, 304 (9th Cir. 1992).
 
 
 7
 The bankruptcy court's determination of whether a debtor's misrepresentation was material and whether a creditor's reliance was reasonable are issues of fact, which we review under the clearly erroneous standard. See In re Lansford, (9th Cir. 1987). We review the bankruptcy court's and BAP's conclusions of law de novo. Id.
 
 
 8
 B. "Materially False" and "Reasonably Relied"
 
 
 9
 The Debtors argued, and the BAP agreed, that the bankruptcy court had incorrectly defined the phrase "materially false."[4] Nevertheless, the BAP determined that the record supported the bankruptcy court's decision because the court had correctly considered the disparity between the valuations in the Debtors' financial statement and their bankruptcy schedules. See In re Greene, 96 B.R. 279, 283-84 (B.A.P. 9th Cir. 1989) ("The omission of a debt of such magnitude in relation to the total debt structure is a clear example of a material misrepresentation."). The BAP rejected the Debtors' argument that the bankruptcy court had incorrectly defined the phrase "reasonably relied." See In re Kirsch, 973 F.2d 1454, 1457-58 (9th Cir. 1992) (discussing the common law definition of fraud and the standard of "justifiably relied" under Sec. 523(a)(2)(A) and noting that the phrase "reasonably relied" is specifically set forth in Sec. 523(a)(2)(B)).
 
 
 10
 On appeal, the Debtors complain that the bankruptcy court erred in defining and applying the phrases "materially false" and "reasonably relied." First, the Debtors argue that the representations in their financial statement were not "materially false" and that Paulson could not have "reasonably relied" because this was not the type of information that would normally affect a hard-money real estate lender's decision whether to grant credit. Second, the Debtors argue that the misrepresentation of the fair market value of their personal property was merely a matter of opinion, not a statement of fact. Third, the Debtors claim that Paulson's reliance was unreasonable because he had an affirmative duty to verify the information that they listed in their financial statement.
 
 
 11
 We are unpersuaded by these arguments. The Debtors' financial statement portrayed them as individuals with extensive personal assets when, in fact, they had inflated the value of their personal property by over nine times. Although the Debtors have conceded that they substantially distorted their financial picture, their expert witness testified that a hard-money real estate lender would not have been concerned with the value of a debtor's personal property. However, we note that Paulson's loan was only secured by a third deed of trust, which is an admittedly risky security in lending circles. Under these circumstances, we believe that the bankruptcy court was entirely correct in rejecting the argument that the Debtors' misrepresentations were irrelevant to the loan approval process.
 
 
 12
 We also reject the Debtors' argument that misrepresenting the value of property is merely a matter of opinion. See Lansford, 822 F.2d at 904 ("The finding of materiality is supported by the multiple misrepresentations contained in the financial statement as to assets and their value ...."). Finally, we have declined to adopt a per se rule requiring creditors to verify financial statements, and we agree with the bankruptcy court that to do so would essentially render Sec. 523(a)(2)(B) a nullity. See Lansford, 822 F.2d at 904 ("Having intentionally misled the sellers ... it is unseemly for [the debtor] now to argue that he should be excused from section 523 because the sellers believed him."). We conclude that the bankruptcy court did not clearly err in determining that Paulson reasonably relied on the Debtors' materially false financial statement.
 
 III. CONCLUSION
 
 13
 For the foregoing reasons, the BAP's decision affirming the bankruptcy court's order is AFFIRMED.
 
 
 
 *
 The Honorable Floyd R. Gibson, Senior Circuit Judge for the Eighth Circuit Court of Appeals, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The Debtors' real estate had been damaged in an earthquake, and the property's diminished value did not exceed their obligation on the second deed of trust
 
 
 [2]
 Paulson testified that he was particularly concerned about the details of the Debtors' financial statement because of the risk involved in accepting a third deed of trust as security for a loan
 
 
 [3]
 In relevant part, this section reads:
 (a) A discharge under section 727, 1141,, [sic] 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
 ...
 (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
 ...
 (B) use of a statement in writing--
 (i) that is materially false;
 (ii) respecting the debtor's or an insider's financial condition;
 (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
 (iv) that the debtor caused to be made or published with intent to deceive ....
 11 U.S.C. Sec. 523(a)(2)(B).
 
 
 [4]
 In discussing whether the Debtors' misrepresentation was material, the bankruptcy court stated: "[a] misrepresentation is deemed material if credible evidence is presented that the creditor would not have entered into the subject transaction had the truth been revealed." We note that the bankruptcy court's definition of "materially false" is more accurately described as incomplete, rather than incorrect. See In re Greene, 96 B.R. 279, 283 (B.A.P. 9th Cir. 1989) ("A statement can be materially false if it includes information which is 'substantially inaccurate' and is of the type that would affect the creditor's decision making process.")